**THE SULTZER LAW GROUP, P.C.**
Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**HALUNEN LAW**
Melissa W. Wolchansky (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*Counsel for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————— x

JAISH MARKOS, individually on behalf of　　　:
himself and all others similarly situated,　　　:

　　　　　　　　　　　　　　　　　　　　:　　Case No.

　　　　　　　Plaintiff,　　　　　　　　　:

v.　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

RUSSELL BRANDS, LLC.　　　　　　　　:　　**CLASS ACTION COMPLAINT**
　　　　　　　Defendant.　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:　　**JURY TRIAL DEMANDED**

　　　　　　　　　　　　　　　　　　　　:

　　　　　　　　　　　　　　　　　　　　:

———————————————————————— x

1

Plaintiff, JAISH MARKOS, individually and on behalf of himself and all others similarly situated throughout the country, by his attorneys, alleges the following on his personal knowledge as to matters related to Plaintiff, and upon information and belief, through the investigation of Plaintiff's counsel, as to all other matters:

## NATURE OF THE ACTION

1.      Plaintiff Jaish Markos ("Plaintiff") brings this action against Russell Brands, LLC. ("Russell Brands" or "Defendant") on behalf of himself and a class consisting of all consumers nationwide, as well as a New York subclass, who purchased Spalding NEVERFLAT basketballs at any time during the applicable statute of limitations period (the "Class Period").

2.      Russell Brands is a company that manufactures, designs, and markets sports equipment—including basketballs—under the Spalding brand name, including the Spalding NEVERFLAT basketballs (the "Product" or "Products").

3.       The very name, "NEVERFLAT,"[1] represents to consumers that the Products are uniquely designed to stay fully inflated, unlike other basketballs. Additionally, Defendant claims the Products are "the only ball guaranteed to stay fully inflated for at least 1 year – 10X longer than any traditional basketball."[2]

4.      The reduction in air pressure in a ball is referred to as becoming "flat."[3] A flat basketball will not have the same performance capabilities as a fully inflated basketball.

5.      The air pressure within a basketball is a material element of the Products, as it dictates the performance of the ball. As an example of the importance which air pressure plays in

---

[1] USPTO Registration Number 3413574.

[2] Spalding, http://shop.spalding.com/info/Neverflat (last visited May 19, 2016).

[3] Merriam-Webster, http://www.merriam-webster.com/dictionary/flat (last visited May, 26, 2016) (7(e) "*of a tire*: lacking air").

the performance of a basketball, the National Basketball Association ("NBA") rules recommend the air pressure within the ball be between 7.5 and 8.5 pound per square inch ("psi").[4]

6.     The air pressure within the ball will in turn dictate the height of the ball's rebound; a critical element of a basketball's performance.[5]

7.     Independent testing has shown that the Products lose significant air pressure over the course of 12 months, and thus become "flat."

8.     Additionally, testing has shown that the Products never achieve the minimum advertised rebound height, and what height they do achieve diminishes over the course of a year.

9.     To label the Products as NEVERFLAT and staying fully inflated creates consumer deception and confusion. A reasonable consumer purchases the Products believing they will remain fully inflated (i.e. will not lose air pressure), and will maintain the same rebound height for at least a year based on the Products' label. However, a reasonable consumer would not deem the Products to stay fully inflated if he/she knew that the Products lost air pressure and rebound height.

10.    Defendant's misrepresentations about the Products were uniform and were communicated to Plaintiff, and every other member of the Class, at every point of purchase and consumption throughout the Class Period.

---

[4] National Basketball Association, *Official Rules of the National Basketball Association 2015-2016* (Nov. 2, 2015) at Rule No. 2, Section II(e), *available at* https://turnernbahangtime.files.wordpress.com/2015/11/official-nba-rule-book-2015-16.pdf.

[5] NCAA, *Men's Basketball 2015-16 and 2016-17 Rules*, (2015) Rule 1, § 16, Art. 7 ("The air pressure that will give the required reaction shall be stamped on the ball. the ball shall be inflated to an air pressure such that when it is dropped to the playing surface from a height of 6 fee measured to the bottom of the ball, it will rebound to a height, measured to the top of the ball, of not less than 49 inches when it strike its least resilient spot not more than 54 inches when it strikes is most resilient spot.")

## THE PARTIES

*Plaintiff*

11.     Plaintiff is a citizen of the State of New York, residing in the County of Dutchess. In 2015, Plaintiff purchased the NEVERFLAT basketball from Amazon.com. Plaintiff saw and relied upon the Products' labeling, Products' advertising, Products' packaging, and Defendant's website http://shop.spalding.com.

12.      The website and on-label representations were material to Plaintiff's decision to make the purchase, and/or buy the Product at a premium price.

13.     Plaintiff paid a premium for the Product and opted against buying less expensive basketballs not advertised as "NEVERFLAT," guaranteed to stay fully inflated, and to maintain a rebound height between 54 and 60 inches over 12 months. As a result of purchasing the Product at a premium price in reliance on advertising and representations that are false, Plaintiff suffered an injury in fact.

14.     Over the course of one year, Plaintiff's Product became flat.

15.     If the Products' representations were true, Plaintiff would imminently purchase the Products.

*Defendant*

16.     Defendant is a Delaware corporation with its principal place of business at One Fruit of the Loom Drive, Blowing Green, Kentucky. Defendant manufactures, sells, markets, distributes, advertises, and promotes the Products in New York and throughout the United States.

17.     Defendant falsely advertises and misrepresents to its consumers, including Plaintiff and the Class Members, that, unlike traditional basketballs, its Products will stay fully inflated and maintains a rebound height between 54 and 60 inches over 12 months.

4

18.     The material misrepresentations and mislabeling induced Defendant's consumers, including Plaintiff and Class Members, to purchase the Products at a premium price. To their detriment, Plaintiff and Class Members relied on Defendant's false and misleading misrepresentations and mislabeling.

19.     Defendant's statements are false and its practices are deceptive and misleading because, *inter alia*, the Products' do not stay fully inflated for a 12 month period nor maintain a rebound height at between 54 inches and 60 inches. In fact, the Products' lose 3.65 psi in 12 months, dropping below NBA and or Defendant's recommended levels. Additionally, the initial rebound height is actually between 46 inches and 48 inches, and then within 200 days of purchasing and using the Products, the Products' rebound height decreases by approximately 5%.

## JURISDICTION AND VENUE

20.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d), in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York and Defendant is a citizen of the States of Delaware and Kentucky; and (3) the amount in controversy exceeds the sum of $5,000,000, exclusive of interest and costs.

21.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

22.     Pursuant to 28 U.S.C. section 1391(b)(2), venue is proper in this District because the transactions giving rise to the claims occurred in Dutchess County, New York.

## SUBSTANTIVE ALLEGATIONS

**A.      Defendant deliberately deceives consumers by falsely marketing the Products as staying fully inflated and maintaining rebound height.**

23.      In order to charge a premium over and above other Spalding basketballs (including, but not limited to, the NBA ZI/O Excel, the TF-150, and the NBA Varsity), and to charge a premium over and above basketballs sold by competitors, Defendant introduced the Spalding NEVERFLAT basketball into the marketplace.

24.      To justify the Products' premium price, Defendant claims on the Products' packaging and on its website that the Products will remain fully inflated and maintain rebound height.

25.      The very name, "NEVERFLAT,"[6] represents to consumers that the Products are uniquely designed to stay fully inflated, unlike other basketballs.

26.      Additionally, the Products' packaging states, "Stays Inflated 10x Longer Guaranteed," "Maintenance-Free Performance. No need to add air pressure during the first year," "tightens bladder pores to improve pressure retention," "Specially Designed Valve with cap eliminates leaks and keeps dirt out," "Never Flat holds air 10 times longer," as well as a chart showing the Products maintaining 7 to 9 psi for an entire year.

---

[6] USPTO Registration Number 3413574.

6




27.     Defendant reinforces these claims on the website by stating, the Product "… is the first ever ball with pressure retention technologies and is the only ball guaranteed to stay fully inflated for at least 1 year – 10X longer than any traditional basketball."[7] Additionally, Defendant provides a chart that purports to show that the Product maintains the rebound height between 54 and 60 inches over a 12 month period, while the rebound height for "traditional" basketballs steadily decreases to between 38 and 44 inches within the same time period.

---

[7] Spalding, http://shop.spalding.com/info/Neverflat (last visited May 19, 2016).



28.     Thus, the labeling of the Products was designed to create consumer belief that the

Products will stay fully inflated for 1 year and maintain their rebound height.

**B.     Testing shows the Products do not stay fully inflated nor maintain their rebound height.**

29.     Unfortunately for consumers, Defendant's Products claims are demonstrably

false. In fact, independent testing by a reputable testing facility demonstrated that Defendant's

claims are false inasmuch as:[8]

a)  Each Product lost approximately 2 psi over a 200 day period;
b)  The Products' rebound height initial rebound height is actually between 46 inches and 48 inches, not between 54 inches and 60 inches; and
c)  The Products' rebound height decreases by approximately 0.0125 inches each day (5% over approximately 200 days).

---

[8] Independent testing shows that the reduction in performance is related to loss of air pressure as a result of diffusion through the products' bladder and leaking through the products' air inflation valve.

30.     According to this testing, the NEVERFLAT's lost approximately 2 psi over 200 days. This is approximately 22% of the of the Products' pressure. Extrapolated over the 12 month period the Products' are advertised not to lose psi, according to the testing, the basketballs lose 3.65 psi (40.5% of their pressure).

31.     This is a significant drop in the psi. Defendant recommends the basketballs be inflated to between 7 and 9 psi.[9] Even if inflated to the maximum of 9 psi, the ball would fall below the minimum 7.5 psi set by the NBA, as well as the minimum 7 psi set by Defendant. Thus, the testing shows the Products become flat over a 12 month period.

32.     Moreover, the rebound height for the Products never reached that minimum 49 inches required by the NCAA.[10] Additionally, the rebound height dropped by 0.0125 inches per day. This is 4.5625 inches over a 12 month period. This is a significant reduction in the basketball's rebound height, and well below the minimum set by the NCAA. Thus, the testing shows the Products do not maintain their rebound height.

33.     Additionally, this independent testing, by a reputable testing facility, demonstrated that competitors' basketballs–that retailed for a fraction of the price of the Products–maintained higher rebound heights than the Products over a 12 month period.

34.     By way of example, the MacGregor X35WC basketball retails at WalMart for $7. Methodologically sound tests established that over the course of 20,000 bounces, the MacGregor X35WC basketball maintained a rebound height of between 51 inches and 53 inches. In stark contrast, the NEVERFLAT basketball, which retails at WalMart for between $39.99 and $44.99,

---

[9] *See* Spalding, http://shop.spalding.com/info/FAQ (last visited May 26, 2016) ("Basketball: what is the recommended inflation level for a basketball? 7 to 9 PSI (pounds per square inch)").

[10] *See supra* Note 5.

only sustained an initial rebound height of between 46 inches and 48 inches, and then decreased by approximately 0.0125 inches per day.

**C.  Reasonable consumers purchase the Products because they have been deceived to believe they will stay fully inflated and maintain their rebound height.**

35.     Defendant's labeling of the Products as NEVERFLAT, as well as its other marketing, unequivocally demonstrates its intent to persuade the consumer that the Products will remain fully inflated and maintain their rebound height for at least 12 months. However, as described above, the Products lose up to 3.65 psi over that period of time thereby becoming flat; as well as never achieve the full 54 to 60 inches of rebound height while losing 4.5625 inches over a 12 month period.

36.     These claims, induced the Plaintiff and the Class Members to pay a premium over and above basketballs that are not advertised as, *inter alia*, a) guaranteed to stay fully inflated for at least 1 year – 10X longer than any traditional basketball; and b) maintaining a 54 to 60 inch rebound height.

37.     Far from being "NEVERFLAT," the Products' rapid air pressure loss, due to a design defect, renders the Products functionally flat in less than a year.

38.     Hence, Defendant's claims that the Products stay fully inflated and maintain their rebound height are false and misleading.

39.     Defendant has thus violated, *inter alia*, NY General Business Law § 349 and § 350 by misleadingly, inaccurately, and deceptively advertising its Products.

40.     Had Plaintiff and Class Members known that the Products were misbranded and contained false and misleading representations, Plaintiff and Class Members would not have

purchased the Products at an unwarranted premium above alternative Products that were not misbranded and mislabeled.

## CLASS ALLEGATIONS

43. Plaintiff brings this matter on behalf of himself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing, advertising, and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

44. Pursuant to Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, Plaintiff brings this action individually and on behalf of a proposed class (the "Injunctive Relief Class") defined as follows:

> **The Injunctive Relief Class.** All individual consumers who purchased one or more of the Products in the United States and its territories for personal, family, or household purposes and not for resale during the period from June 1, 2010, to the date of class certification. Plaintiff asks the Court to adjudicate only liability, declaratory relief, and injunctive relief through the Injunctive Relief Class; the Injunctive Relief Class does not seek any form of monetary relief.

45. Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a proposed class (the "Monetary Relief Class") defined as follows:

> **The Monetary Relief Class.** All individual consumers who purchased one or more of the Products in the United States and its territories for personal, family, or household purposes and not for resale during the period from June 1, 2010, to the date of class certification. Plaintiff asks the Court to adjudicate all remedies through the Monetary Relief Class.

46. Additionally, pursuant to Rule 23(a) and (b)(3), Plaintiff brings this action individually and on behalf of a proposed subclass (the "New York Subclass") defined as follows:

> **The New York Subclass.** All individual consumers who purchased one or more of the Products in the State of New York for personal, family, or household purposes and not for resale during the period from June 1, 2010, to the date of class certification. Plaintiff asks the Court to adjudicate all remedies through the New York Subclass.

47.     Collectively, the Injunctive Relief Class, the Monetary Relief Class, and the New York Subclass are the "Class."

48.     Excluded from the Class are: (a) Defendant, Defendant's board members, executive-level officers, and attorneys, and immediately family members of any of the foregoing persons; (b) governmental entities; (c) the Court, the Court's immediate family, and the Court staff; and (d) any person that timely and properly excludes himself or herself from the Class in accordance with Court-approved procedures.

49.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

50.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendant's deceptive and misleading practices.

51.     <u>Commonality</u>: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

    a.   Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.   Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in illegal, unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

12

    c.   Whether Defendant made false and/or misleading statements to the Class and the public concerning the Products.

    d.   Whether Defendant's false and misleading statements concerning the Products were likely to deceive the public;

    e.   Whether Plaintiff and the Class are entitled to injunctive relief;

    f.   Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

52.   <u>Typicality</u>: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased the Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

53.   <u>Adequacy</u>: Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the Class Members he seeks to represent; his consumer fraud claims are common to all members of the Class and he has a strong interest in vindicating his rights; he has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action. Plaintiff has no interests which conflict with those of the Class. The Class Members' interests will be fairly and adequately protected by Plaintiff and his counsel. Defendant has acted in a manner generally applicable to the Class, making relief appropriate with respect to Plaintiff and the Class Members. The prosecution of separate actions by individual Class Members would create a risk of inconsistent and varying adjudications.

54.   The Injunctive Relief Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class

Members on grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its illegal, misleading, and deceptive marketing practices. Plaintiff would purchase the Products again if the design is changed so that the Products perform as represented by Defendant.

55.    The Class is properly brought and should be maintained as a class action under Rule 23(b) because a class action is superior to traditional litigation of this controversy. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's illegal, deceptive, and misleading marketing and labeling practices. In addition, this Class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*:

56.    Superiority: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

    a.  The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

    b.  The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it

impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.   When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.   This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.   Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.   This class action will assure uniformity of decisions among Class Members;

g.   The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.   Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

i.   It would be desirable to concentrate in this single venue the litigation of all Class Members who were induced by Defendant's uniform false and illegal advertising to purchase its Products.

57.   Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## FIRST CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 349
### (On Behalf of Plaintiff and All Class and/or New York Subclass Members)

58.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

59.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

60.     The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the Class and/or New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining it from inaccurately describing, labeling, marketing, and promoting its Products.

61.     There is no adequate remedy at law.

62.     Defendant misleadingly, inaccurately and deceptively presents the Products to consumers.

63.     Defendant's improper consumer-oriented conduct—including labeling and advertising that the Products will stay fully inflated for a 12 month period, and the rebound height of the Products remained at between 54 and 60 inches —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the Class to purchase and pay a premium for Defendant's Products and to use this Products when they otherwise would not have.

64.     Defendant made its illegal, untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

65.    Plaintiff and the Class have been injured inasmuch as they paid a premium for Products that were contrary to Defendant's representations. Accordingly, Plaintiff and the Class and/or New York Subclass Members received less than what they bargained and/or paid for.

66.    Defendant's advertising and Products' packaging and labeling induced the Plaintiff and Class and/or New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

67.    Defendant's deceptive, illegal, and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the Class have been damaged thereby.

68.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the Class are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and All Class and/or New York Subclass Members)**

69.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

70.    N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

71. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect. In determining whether any advertising is misleading, there shall be taken into

account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

72.     Defendant's labeling and advertisements contain untrue, illegal, and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that over a 12 month period the Products would remain fully inflated, and the rebound height would remain at between 54 and 60 inches.

73.     Plaintiff and the Class have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for a Product that—contrary to Defendant's representations— does not stay fully inflated for a 12 month period, nor maintain a rebound height of between 54 and 60 inches over a 12 month period. Accordingly, Plaintiff and the Class received less than what they bargained and/or paid for.

74.     Defendant's advertising, packaging and labeling induced the Plaintiff and Class to buy Defendant's Products.

75.     Defendant made untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

76.     Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

77.     Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

78.     Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

79.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and Class and/or New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATION OF KENTUCKY CONSUMER PROTECTION ACT
#### (On Behalf of Plaintiff and All Class Members)

80.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

81.     Plaintiff and the Class Members are consumers entitled to the protections of the Consumer Protection Act, KRS 367.110, *et. seq.* (the "KCPA") and may recover damages pursuant to the provisions of the KCPA, both compensatory and punitive.

82.     Defendant deceived Plaintiff and members of the proposed Class in violation of the KCPA by promoting and/or allowing sales of the Products with the use of unfair, false, misleading or deceptive acts or practices in the conduct of the trade and/or commerce of selling the Products. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the Products.

83.     As detailed above, Defendant, through its advertisements and packaging, used unconscionable commercial practices, deception, fraud, false promises and misrepresentations in violation of the KCPA in connection with the marketing of the Products.

71.     Specifically, Defendant violated the KCPA by representing that over a 12 month period the Products would remain fully inflated, and the rebound height would remain at between 54 and 60 inches.

72.     Contrary to Defendant's representations, the Products' will not stay fully inflated for a 12 month period, nor will the rebound height remain at between 54 inches and 60 inches over the same period of time. In fact, the Products' lose 3.65 psi in 12 months, dropping below NBA and or Defendant's recommended levels. Additionally, the initial rebound height is actually between 46 inches and 48 inches, and then within 200 days of purchasing and using the Products, the Products' rebound height decreases by approximately 5%.

73.     Defendant's misrepresentations were material to Plaintiff's and Class Members' decision to pay a significant premium for the Products.

74.     Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

75.     As a result of Defendant's violations of the KCPA, Plaintiff and Class Members paid a significant premium for the Products as compared to products serving the same purpose.

84.     Pursuant to the KCPA, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, and special damages including but not limited to reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

85.     Defendant also knowingly concealed, suppressed and consciously omitted material facts from Plaintiffs and other members of the Class knowing that consumers would rely on the advertisements and packaging and defendant's uniform representations to purchase the Product.

## FOURTH CAUSE OF ACTION
## VIOLATION OF STATE CONSUMER PROTECTION STATUTES
### (On Behalf of Plaintiff and All Class Members)

86.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

87.     Plaintiff and Class Members have been injured as a result of Defendant's violations of the following state consumer protection statutes, which also provide a basis for redress to Plaintiff and Class Members based on Defendant's fraudulent, deceptive, unfair and unconscionable acts, practices and conduct.

88.     Defendant's conduct as alleged herein violates the consumer protection, unfair trade practices and deceptive acts laws of each of the following jurisdictions:

a.     **Alaska:** Defendant's practices were and are in violation of Alaska's Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*

b.     **Arizona:** Defendant's practices were and are in violation of Arizona's Consumer Fraud Act, Ariz. Rev. Stat. Ann. §§ 44-1521, *et seq.*

c.     **Arkansas:** Defendant's practices were and are in violation of Arkansas Code Ann. § 4-88-101, *et seq.*

d.     **California:** Defendant's practices were and are in violation of California Consumer Legal Remedies Act, Civil Code § 1750, *et seq.*, and California's Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

e.     **Colorado**: Defendant's practices were and are in violation of Colorado's Consumer Protection Act, Colo. Rev. Stat. §§ 61-1-101, *et seq.*

f.   **Connecticut:** Defendant's practices were and are in violation of Connecticut's Gen. Stat. § 42-110a, *et seq.*

g.   **Delaware:** Defendant's practices were and are in violation of Delaware's Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511, *et seq.* and the Deceptive Trade Practices Act, Del. Code Ann. tit. 6, § 2531, *et seq.*

h.   **District of Columbia:** Defendant's practices were and are in violation of the District of Columbia's Consumer Protection Act, D.C. Code § 28-3901, *et seq.*

i.   **Florida:** Defendant's practices were and are in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*

j.   **Hawaii:** Defendant's practices were and are in violation of the Hawaii's Uniform Deceptive Trade Practices Act, Haw. Rev. Stat. § 481A-1, *et seq.* and Haw. Rev. Stat. § 480-2.

k.   **Idaho:** Defendant's practices were and are in violation of Idaho's Consumer Protection Act, Idaho Code Ann. § 48-601, *et seq.*

l.   **Illinois:** Defendant's acts and practices were and are in violation of Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2; and Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/2.

m.   **Indiana:** Defendant's practices were and are in violation of Indiana's Deceptive Consumer Sales Act, Ind. Code Ann. § 24-5-0.5-1, *et seq.*

n.  **Kansas:** Defendant's practices were and are in violation of Kansas's Consumer Protection Act, Kat. Stat. Ann. § 50-623, *et seq.*

o.  **Kentucky:** Defendant's practices were and are in violation of Kentucky's Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*

p.  **Maine:** Defendant's practices were and are in violation of the Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. Ann. Tit. 5, § 205-A, *et seq.* and 10 Me. Rev. Stat. Ann. § 1101, *et seq.*

q.  **Maryland:** Defendant's practices were and are in violation of Maryland's Consumer Protection Act, Md. Code Ann. Com. Law § 13-101, *et seq.*

r.  **Massachusetts:** Defendant's practices were unfair and deceptive acts and practices in violation of Massachusetts' Consumer Protection Act, Mass. Gen. Laws ch. 93A, § 2.

s.  **Michigan:** Defendant's practices were and are in violation of Michigan's Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq.*

t.  **Minnesota:** Defendant's practices were and are in violation of Minnesota's Prevention of Consumer Fraud Act, Minn. Stat. § 325F.68, *et seq.* and the Unlawful Trade Practices law, Minn. Stat. § 325D.09, *et seq.*

u.  **Missouri:** Defendant's practices were and are in violation of Missouri's Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*

v.  **Nebraska:** Defendant's practices were and are in violation of Nebraska's Consumer Protection Act, Neb. Rev. Stat. § 59-1601, *et seq.* and the Uniform Deceptive Trade Practices Act, § 87-302, *et seq.*

w.  **Nevada:** Defendant's practices were and are in violation of Nevada's Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. §§ 598.0903 and 41.600.

x.  **New Hampshire:** Defendant's practices were and are in violation of New Hampshire's Regulation of Business Practices for Consumer Protection, N.H. Rev. Stat. Ann. § 358-A:1, *et seq.*

y.  **New Jersey:** Defendant's practices were and are in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*

z.  **New Mexico:** Defendant's practices were and are in violation of New Mexico's Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq.*

aa.  **New York:** Defendant's practices were in and are in violation of New York's Gen. Bus. Law §§ 349, *et seq.*

bb.  **North Carolina:** Defendant's practices were and are in violation of North Carolina's Unfair Deceptive Trade Practices Act, N.C. Gen. Stat. Ann. § 75-1, *et seq.*

cc.  **North Dakota:** Defendant's practices were and are in violation of North Dakota's Unlawful Sales or Advertising Practices law, N.D. Cent. Code § 51-15-01, *et seq.*

dd.  **Ohio:** Defendant's practices were and are in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq.* and Ohio's Deceptive Trade Practices Act. Ohio Rev. Code Ann. § 4165.01, *et seq.*

ee.  **Oklahoma:** Defendant's practices were and are in violation of Oklahoma's Consumer Protection Act, Okla. Stat. Ann. tit. 15 § 751, *et*

24

*seq.*, and Oklahoma's Deceptive Trade Practices Act, Okla. Stat. Ann. tit. 78 § 51, *et seq.*

ff.   **Oregon:** Defendant's practices were and are in violation of Oregon's Unlawful Trade Practices law, Or. Rev. Stat. § 646.605, *et seq.*

gg.   **Pennsylvania:** Defendant's practices were and are in violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 Pa. Stat. Ann. § 201-1, *et seq.*

hh.   **Rhode Island:** Defendant's practices were and are in violation of Rhode Island's Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*

ii.   **South Dakota:** Defendant's practices were and are in violation of South Dakota's Deceptive Trade Practices and Consumer Protection Act, S.D. Codified Laws § 37-24-1, *et seq.*

jj.   **Texas:** Defendant's practices were and are in violation of Texas' Deceptive Trade Practices Consumer Protection Act, Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*

kk.   **Utah:** Defendant's practices were and are in violation of Utah's Consumer Sales Practices Act, Utah Code Ann. § 13-11-1, *et seq.*, and Utah's Truth in Advertising Law, Utah Code Ann. § 13-11a-1, *et seq.*

ll.   **Vermont:** Defendant's practices were and are in violation of Vermont's Consumer Fraud Act, Vt. Stat. Ann. tit. 9 § 2451, *et seq.*

mm.   **Washington:** Defendant's practices were and are in violation of Washington Consumer Protection Act, Wash. Rev. Code Ann. § 19.86, *et seq.*

nn.   **West Virginia:** Defendant's practices were and are in violation of West

Virginia's Consumer Credit and Protection Act, W. Va. Code § 46A-6-

101, *et seq.*

oo.   **Wisconsin:** Defendant's practices were and are in violation of

Wisconsin's Consumer Act, Wis. Stat. §421.101, *et seq.*

pp.   **Wyoming:** Defendant's practices were and are in violation of Wyoming's

Consumer Protection Act, Wyo. Stat. Ann. §40-12-101, *et seq.*

76.     Defendant violated the aforementioned states' unfair and deceptive acts and

practices laws by representing that over a 12 month period the Products would remain fully

inflated, and the rebound height would remain at between 54 and 60 inches.

77.     Contrary to Defendant's representations, the Products' will not stay fully inflated

for a 12 month period, nor will the rebound height remain at between 54 inches and 60 inches

over the same period of time. In fact, the Products' lose 3.65 psi in 12 months, dropping below

NBA and or Defendant's recommended levels. Additionally, the initial rebound height is actually

between 46 inches and 48 inches, and then within 200 days of purchasing and using the Products,

the Products' rebound height decreases by approximately 5%.

78.     Defendant's misrepresentations were material to Plaintiff's and Class Members'

decision to pay a significant premium for the Products.

79.     Defendant made its untrue and/or misleading statements and representations

willfully, wantonly, and with reckless disregard for the truth.

80.     As a result of Defendant's violations of the aforementioned states' unfair and

deceptive practices laws, Plaintiff and Class Members paid a significant premium for the

Products as compared to products serving the same purpose.

81.     Pursuant to the aforementioned states' unfair and deceptive practices laws, Plaintiff and Class Members are entitled to recover compensatory damages, restitution, punitive and special damages including but not limited to treble damages, reasonable attorneys' fees and costs and other injunctive or declaratory relief as deemed appropriate or permitted pursuant to the relevant law.

### FIFTH CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

82.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83.     Plaintiff brings this claim individually and on behalf of all members of the Class.

84.     Defendant provided the Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that over a 12 month period the Products would remain fully inflated, and the rebound height would remain at between 54 and 60 inches.

85.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

86.     These affirmations of fact became part of the basis for the bargain and were material to the Plaintiff's and Class Members' transactions.

87.     Plaintiff and Class Members reasonably relied upon the Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

88.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which it refused to do.

89.     Defendant breached the express warranty because, the Products' will not stay fully inflated for a 12 month period, and the rebound height over the same period does not remain at between 54 inches and 60 inches. In fact, the Products' lose 3.65 psi in 12 months, dropping below NBA and or Defendant's recommended levels. Additionally, the initial rebound height is actually between 46 inches and 48 inches, and then within 200 days of purchasing and using the Products, the Products' rebound height decreases by approximately 5%.

90.     Defendant thereby breached the following state warranty laws:

    a.     Code of Ala. § 7-2-313;

    b.     Alaska Stat. § 45.02.313;

    c.     A.R.S. § 47-2313;

    d.     A.C.A. § 4-2-313;

    e.     Cal. Comm. Code § 2313;

    f.     Colo. Rev. Stat. § 4-2-313;

    g.     Conn. Gen. Stat. § 42a-2-313;

    h.     6 Del. C. § 2-313;

    i.     D.C. Code § 28:2-313;

    j.     Fla. Stat. § 672.313;

    k.     O.C.G.A. § 11-2-313;

    l.     H.R.S. § 490:2-313;

    m.     Idaho Code § 28-2-313;

n.      810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

91.     As a direct and proximate result of Defendant's breach of express warranty,

Plaintiff and Class Members were damaged in the amount of the price they paid for the Products,

in an amount to be proven at trial.

### SIXTH CAUSE OF ACTION
### VIOLATION OF THE MAGNUSON-MOSS
### WARRANTY ACT, 15 U.S.C. § 2301 et seq.
### (On Behalf of Plaintiff and All Class Members)

92.     Plaintiff repeats and realleges each and every allegation contained in the

foregoing paragraphs as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of all members of the Class.

Upon certification, the Class will consist of more than 100 named class members.

94.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

95.     The Products is a "consumer Product" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

96.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

97.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

98.     Defendant represented in writing that over a 12 month period the Products would remain fully inflated, and the rebound height would remain at between 54 and 60 inches.

99.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products is represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

100.     As alleged herein, Defendant breached the written warranty because, contrary to Defendant's representations, the Products' will not stay fully inflated for a 12 month period, and the rebound height over the same period does not remain at between 54 inches and 60 inches. In fact, the Products' lose 3.65 psi in 12 months, dropping below NBA and or Defendant's recommended levels. Additionally, the initial rebound height is actually between 46 inches and 48 inches, and then within 200 days of purchasing and using the Products, the Products' rebound height decreases by approximately 5%.

101.    The Products does not conform to the Defendant's written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*. Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### SEVENTH CAUSE OF ACTION
### COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

102.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

103.    Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

104.    Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling its Products while misrepresenting and omitting material facts.

105.    Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment. Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

106.    Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for Products that were not as the Defendant represented them to be.

107.    Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

108.    Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, prays for judgment as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b) Entering preliminary and permanent injunctive relief against Defendant, directing Defendant to correct its practices and to comply with consumer protection statutes nationwide, including New York consumer protection law;

(c) Awarding monetary damages, including treble damages;

(d) Awarding punitive damages;

(e) Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f) Granting such other and further relief as the Court may deem just and proper.

Dated: June 10, 2016

**THE SULTZER LAW GROUP, P.C.**

_____
Jason P. Sultzer, Esq.
*sultzerj@thesultzerlawgroup.com*
Joseph Lipari, Esq.
85 Civic Center Plaza, Suite 104
Poughkeepsie, New York 12601
Telephone: (845) 483-7100
Facsimile: (888) 749-7747

**REESE LLP**
Michael R. Reese
*mreese@reesellp.com*
100 West 93rd Street, 16th Floor
New York, New York 10025
Telephone: (212) 643-0500
Facsimile: (212) 253-4272

**HALUNEN LAW**
Melissa W. Wolchansky (to be admitted *pro hac vice*)
*Wolchansky@halunenlaw.com*
1650 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*Counsel for Plaintiff and the Class*