**THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JAISH MARKOS, individually on behalf of himself and all others similarly situated,<br><br>              Plaintiff,<br>v.<br><br>RUSSELL BRANDS, LLC,<br><br>              Defendant. | Case No.: 7:16-cv-04632 (CS)<br><br>***Defendant's***<br>***Motion for Summary Judgment***<br><br>**ORAL ARGUMENT REQUESTED** |

---

**REPLY BRIEF OF DEFENDANT RUSSELL BRANDS, LLC**
**IN FURTHER SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

---

Michael R. McDonald, Esq.
Joshua S. Levy, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Defendant*
*Russell Brands, LLC*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. 1

PRELIMINARY STATEMENT ........................................................................... 2

I.  SPALDING IS ENTITLED TO JUDGMENT ON ALL CLAIMS. ................................. 3

  A.  There Are No Genuine Issues Of Fact Supporting Plaintiff's Claims Of Falsity In Spalding's Air Retention Statements On The Product Packer (Including "Stays Inflated 10x Longer Guaranteed!") .......................................... 3

  1.  Markos's Testimony ................................................................... 3

  2.  Customer Service Records, Expert Opinions And "Internal" Testing. .................. 6

  B.  There Are No Genuine Issues Of Material Fact Supporting Plaintiff's Claims Of Falsity Regarding The Statements On Shop.Spalding.Com ................. 8

  C.  The Name "Neverflat" Is Not A False Statement. .................................. 10

II.  PLAINTIFF MISCONSTUES MATERIALITY. .............................................. 11

III.  PLAINTIFF PROFFERED NO EVIDENCE OF INJURY. ................................... 13

IV.  PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF. .............................. 14

CONCLUSION ......................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

In re Amla Litig.,
  2018 WL 3629226 (S.D.N.Y. July 31, 2018) ..................................................................12, 13

Burns v. Bank of Am.,
  655 F. Supp. 2d 240 (S.D.N.Y. 2008)........................................................................................4

Daniel v. Mondelez Int'l, Inc.,
  287 F. Supp. 3d 177 (E.D.N.Y. 2018) .....................................................................................12

Daniel v. Tootsie Roll Indus.,
  LLC, 2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ..................................................................9

Debrosse v. City of New York,
  __ F. App'x __, 2018 WL 3198062 (2d Cir. June 28, 2018)....................................................4

In re Dial Complete Mktg. and Sales Practices Litig.,
  312 F.R.D. 36 (D.N.H. 2015) .................................................................................................11

District Attorney of New York County v. Republic of the Philippines,
  307 F. Supp. 3d 171 (S.D.N.Y. 2018)........................................................................................3

F.T.C. v. Colgate-Palmolive Co.,
  380 U.S. 374 (1965).................................................................................................................11

Langan v. Johnson & Johnson Consumer Cos.,
  2017 WL 985640 (D. Conn. Mar. 13, 2017) ..........................................................................11

Loeffel Steel Prods., Inc. v. Delta Brands, Inc.,
  379 F. Supp. 2d 968 (N.D. Ill. 2005) ......................................................................................10

Miller v. Wells Fargo Bank, N.A.,
  994 F. Supp. 2d 542 (S.D.N.Y. 2014)........................................................................................8

Ram Intern., Inc. v. ADT Sec. Servs., Inc.,
  555 F. App'x 493 (6th Cir. 2014) ..............................................................................................9

In The Matter of Thompson Med. Co.,
  1984 WL 565377 (Nov. 23, 1984)...........................................................................................11

In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.,
  2009 WL 2940081 (D.N.J. Sept. 11, 2009) .............................................................................10

## PRELIMINARY STATEMENT

The fundamental question posed by this motion for summary judgment is whether Plaintiff has proffered sufficient evidence—"hard evidence," not conclusory allegations and speculation—to support the claim that Spalding's advertising statements are false. The answer is unequivocally: no. The factual issues are not complex. But Plaintiff spends a full 120 pages arguing what Plaintiff's testimony *means* and what propositions can be advanced based upon his expert's opinions. Smoke and mirrors, however, do not defeat summary judgment.

The Opposition does not address the specific Spalding statements on the product packaging or website, but concludes that all representations are false, based largely on Plaintiff's testimony about the performance of his basketball—a dramatic irony since counsel seeks class certification premised purportedly on "common" issues. According to Plaintiff, although his ball initially performed as expected by bouncing above his waist during play, he later became dissatisfied when the ball was bouncing "presumably below the waist." Based upon this perception of how dribble or bounce height had changed *for him* during outdoor play, he assumed that his ball "lost" air and "went flat." No one measured the ball's air pressure or bounce height, ever.

Despite his disappointment in how high his ball bounced during play, Plaintiff admitted that his ball "stayed inflated" long after the one-year warranty period had expired. The Neverflat air retention technology enables inflated balls to stay inflated longer than traditional sports balls, "10x longer." Spalding had scientific validation for its product representations prior to launch, confirmed again in *unchallenged* expert reports here. And not only did Plaintiff's experts never evaluate the Neverflat statements; but, instead, they concocted fatally flawed bounce height tests and then speculated about air retention performance of all Neverflat basketballs. Ultimately, it

remains undisputed that there is *no* competent evidence that any Spalding statement is false. Thus, summary judgment is compelled.

## I.    SPALDING IS ENTITLED TO JUDGMENT ON ALL CLAIMS.[1]

### A.    There Are No Genuine Issues Of Fact Supporting Plaintiff's Claims Of Falsity In Spalding's Air Retention Statements On The Product Packer (Including "Stays Inflated 10x Longer Guaranteed!").

#### 1.    Markos's Testimony

The principal Neverflat marketing statement is that the product "Stays Inflated 10x Longer Guaranteed!"[2] Plaintiff claims his "testimony" that his ball "lost air" and "did not bounce to a consistent height" is "prima facie evidence that Spalding's representations are false." Pb[3] 9. Specifically, he testified that, after playing with his ball a handful of times, it did not bounce as high as it did when he first received it (i.e., it was bouncing below his waist); therefore, he assumed his ball "lost air," "lost air pressure," and became "flat." Id. This testimony, however, simply does not address the alleged falsity of Spalding's air retention statements on the product packer—including, but not limited to, that Neverflat basketballs "stay[] inflated 10x longer than traditional basketballs"—and does not prevent entry of summary judgment.

***First***, Markos admits that he did not undertake *any* assessment of the validity of the "10x longer" claim. See 56.1 Resp. ¶¶ 16-17. Indeed, Markos did not assess the air retention capabilities of his ball *in any respect* (nor could he as a non-expert), and he certainly did not compare the performance of his ball with a traditional basketball. Id. His dissatisfaction with the way the ball bounced at certain times during outdoor play simply does not support an inference

---

[1] Given page limits, some arguments made by Plaintiff simply do not merit further response.

[2] The vast majority of Neverflat purchasers buy from physical stores, interacting with the packer prior to purchase. Pl.'s 56.1 Response ("56.1 Resp.") ¶ 41. Plaintiff acknowledges that the "10x Longer" statement is the most prominently made representation, id. at 38, and that he personally relied upon the representation that his ball would "hold[] air ten times more." Id. at 68.

[3] "Pb" refers to Plaintiff's Brief in Opposition to Summary Judgment.

that the "10x longer" claim (or any other) is false. See, e.g., District Attorney of New York County v. Republic of the Philippines, 307 F. Supp. 3d 171, 188 (S.D.N.Y. 2018) ("[T]he court should not accord the non-moving party the benefit of unreasonable inferences, or inferences at war with undisputed facts.") (quotations omitted).

**Second**, Plaintiff's repeated conjecture about "lost air" does not raise a genuine issue of fact concerning the alleged falsity of the Neverflat air retention statements on the packer, whether "10x longer" or any other. The proffered proof that Markos's ball "lost air" is only his perception ("more like a feel . . . you feel how much it should bounce," 56.1 Resp. ¶ 9) that the ball at some point did not bounce as he preferred (i.e., it initially bounced "above his waist" and later "presumably below the waist," and "[i]t did not feel the same," id. at 9, 6). Allegedly, because he became dissatisfied with the bounce, he did not use it again and gave it to his attorney. Id. at 7, 74. He did not measure air pressure in his ball when he first received it, when he turned it over to counsel, or even one year after its purchase. Id. at 8; see also Markos Tr. 177:3-8 ("Q. Do you know how many PSI the ball had when you gave it to your attorneys? A. No. Q. Do you know how many PSI the ball had a year after its purchase? A. No."). Thus, he assumed his ball "lost air" only because "it did not rebound like it did when I first got it." See 56.1 Resp. ¶ 8. Clearly, the 'my ball lost air' claim (to the extent it is even relevant to any Spalding representation) is rank speculation.

**Third**, Plaintiff's opinion that his ball "went flat" is not evidence at all, but simply a regurgitation of the Complaint's allegations. Remarkably, Markos himself relied upon the Complaint's allegations to explain at deposition how his ball was allegedly "flat." Id. at 11, 14. But the repeated mantra that Markos's ball went "flat" is, at best, misleading, especially given Markos's admission that "his Neverflat basketball continued to have significant air pressure well

over one year after purchase." Id. ¶ 14. More specifically, Plaintiff's ball stayed inflated even nearly 20 months after purchase, when he testified at his deposition that his ball still had "significant air pressure"—so much so that Markos was unable to say at that time whether his ball had less air in it than when he received it. Id. at 12-15. Again, the 'my ball went flat' assertion is premised only upon Markos's limited perception of adequate bounce for him, which does not demonstrate falsity of the product packer representations (or any other).

As a matter of law, because Markos's testimony offers only assumptions and conjecture regarding air retention in his ball, his testimony is insufficient to create a genuine issue of fact. The opposing party must provide concrete particulars showing that a trial is needed, not merely a conclusion without supporting arguments or facts in opposition to the motion. See, e.g., Debrosse v. City of New York, __ F. App'x __, __, 2018 WL 3198062, at *2 (2d Cir. June 28, 2018) ("We agree with the district court that [Plaintiff's] claim, which is based largely on conclusory, speculative allegations and unsupported by admissible evidence in the record, cannot survive summary judgment."). And here, "Plaintiff['s[] self-serving and unsubstantiated deposition testimony is insufficient to create a triable issue of fact." Burns v. Bank of Am., 655 F. Supp. 2d 240, 258 n.15 (S.D.N.Y. 2008).

Even if the Court were to credit the pure conjecture that Markos's ball "lost air" because it did not bounce the same way it did when he first received it, that testimony simply does not raise a genuine issue of material fact concerning the alleged falsity of Spalding's representations that, for example, Neverflat "stays inflated 10x longer than traditional basketballs," "holds air 10 times longer" or provides "no need to add air pressure during the first year." 56.1 Resp. ¶¶ 38.[4]

---

[4] Plaintiff's submissions repeatedly refer to statements that Neverflat will stay "***fully***" inflated and 10x longer than "***any***" traditional basketball, but these adjectives appeared only on Shop.Spalding.com and never on the product packer. See, e.g., Declaration of Brian Collins in

### 2.    Customer Service Records, Expert Opinions And "Internal" Testing.

Plaintiff also asserts that customer service records, expert opinions and "internal" testing provide "further evidence" that the Neverflat representations are false. E.g., Pb 4-7. Not so.

***First***, that certain customers sought warranty replacements under Spalding's promise of 100% satisfaction guaranteed is obviously not evidence that the air retention representations on the packer are false. In fact, ████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████. 56.1 Resp. ¶¶ 51-54.[5]

***Second***, even if Plaintiff's experts' opinions are held admissible under *Daubert* (and they should not be), summary judgment is still required because they do not offer evidence concerning the truth of the "10x longer" claim, or any other. The experts offered no opinion on air retention of Markos's ball. Id. at 16. Veryst did not test any traditional basketballs and thus offered ***no opinion regarding the 10x longer air retention claims*** of Neverflat versus traditional basketballs. See id. at 17; see also Veryst *Daubert* Br. 3-5. In fact, Veryst admitted that it had reviewed data from Primo, the product inventor, reflecting scientific validation for the 10x longer statements prior to product launch in 2005. See Veryst *Daubert* Br. 25; see also 56.1 Resp. ¶¶ 29-30. Veryst did not measure air pressure; though it tried to find a leakage path during destructive testing, it found no defect. Veryst *Daubert* Br. 5-6. i3 did not measure air pressure either, 56.1 Resp. ¶ 17, and testified that it could not offer an opinion concerning Neverflat representations, as that was outside the scope of its assignment. See i3 *Daubert* Br. 16-17. And

---

Further Support of Summary Judgment ("Collins Decl.") ¶ 2; 56.1 Resp. ¶ 38; Ex. S to McDonald Decl. in Supp. of Mot. for Summary Judgment. Nevertheless, Plaintiff's opinions and speculation about air loss likewise do not render any website statements false.

[5] The Neverflat "Limited One Year Warranty" instructs customers to contact Spalding directly, not retailers. See, e.g., Ex. S to McDonald Decl. in Supp. of Mot. for Summary Judgment. Plaintiff's seeming reliance on unidentified and unavailable "third-party" records from retailers, which Plaintiff never sought in discovery, is unhelpful.

both experts acknowledged the superior air retention capabilities of Neverflat basketballs. See, e.g., Veryst *Daubert* Br. 24-25; i3 *Daubert* Br. 18-19; see also 56.1 Resp. ¶ 32.[6] Essentially, Plaintiff's experts built limited, statistically unsound "rebound-height tests" that speak to none of Spalding's air retention statements, offer admitted speculation based on unfounded assumptions, and do not create a genuine issue of material fact preventing summary judgment.[7]

*Third*, Spalding's air retention statements are not rendered false because of a portion of an isolated internal test. As explained in Spalding's Veryst *Daubert* brief, the principal "testing" document being relied upon (Russell_00268) does not support Veryst's conclusions or tests but actually demonstrates that Neverflat technology works as advertised. See Veryst *Daubert* Br. 20-25. And, ██████████████████████████████████████, Pb 6, 56.1 Resp. ¶ 18, is totally irrelevant since that developmental technology was *never* implemented in Neverflat basketballs sold to consumers. See, e.g., Smith Tr. 168:13-14 ("████████████████████████████████ ████████████████████"); see also Smith Decl. in Supp. of Summary Judgment Reply ¶ 2. Finally, not only is there no evidence of misrepresentation in Spalding's internal documents, but voluminous *unchallenged* evidence—from Spalding's expert reports/opinions to the scientific substantiation of Neverflat technology at product launch—demonstrates that Neverflat basketballs perform as advertised.

---

[6] The argument, Pb 10-11, that since one brand of basketball, Molton—a competitive ball, not a "traditional" basketball—*bounced* comparably to the tested Neverflat balls, is simply not evidence that the air retention representations are false. See generally i3 *Daubert* Br. 17.

[7] The assertion that "[t]here is no variation in the structural features of the Products that would impact their ability to rebound or retain air," Pb 12, is untrue. It is *undisputed*, for example, that an Outdoor basketball (including Neverflats) will bounce higher than a ball made of "composite leather" for Indoor/Outdoor play, 56.1 Resp. 36, and that Plaintiff's *own experts* admitted that their conclusions could not be taken as evidence for all types/models of Neverflat basketball. See, e.g., i3 *Daubert* Br. 16-17; Veryst *Daubert* Br. 13.

**B.      There Are No Genuine Issues Of Material Fact Supporting Plaintiff's Claims Of Falsity Regarding The Statements On Shop.Spalding.Com.**

Because Plaintiff relies on the same "bounced a little differently" testimony to prove the falsity of the Shop.Spalding.com representations, see Ex. S to McDonald Decl. in Supp. of Mot. for Summary Judgment, only a few separate points are needed here.[8]

*First*, referring to the website graphic, the Complaint repeatedly alleges that Markos's ball failed to "achieve the minimum advertised rebound height," Compl. ¶ 8, that is, "between 54 inches and 60 inches." Id. at ¶ 19; see also id. at 27, 29, 35, 36, 63, 72, et al. But, Markos admitted that "he never quantified how high his Neverflat basketball bounced, either before or after he became dissatisfied" and that "there is no way currently to assign a numerical measurement to how high his Neverflat basketball bounced in the past." 56.1 Resp. ¶¶ 14-15.[9] Plaintiff never even expected a ball that bounced between 54 and 60 inches. Id. at 69. Further, Plaintiff's experts claim that they were tasked with noting "change" in rebound height, not "absolute" rebound heights that Neverflat basketballs might achieve under certain test conditions (none of which are specified in the graphic). See, e.g., i3 *Daubert* Br. 6 n.3.

*Second*, seemingly conceding the irrelevance of the "false graphic claim" underlying the Complaint, Plaintiff asserts that he "is not required to demonstrate that his ball did not bounce to any specific height." Pb 11. Instead, or alternatively, he argues that the falsity claim is based on the assertion that what the graphic really means is: "Neverflat balls consistently bounce to the same height over the course of one year." Pb 12. Clearly, though, no such statement appeared on

---

[8] To prove these claims, Plaintiff also relies on customer service records, expert opinions, and "internal" testing—all of which are as deficient to serve as evidence of rebound-height misrepresentation as they are as evidence of air-retention misrepresentation.

[9] Markos in fact never saw the inch marks on the graph depicting "rebound height." When asked "[h]ad you seen those [inch mark] numbers [on the shop.spalding.com chart] specifically prior to purchase?"— he answered, unequivocally, "No." Markos Tr. 80:12-14. When asked what packer material he could recall from his supposed online viewing—he could only answer, "The word Never Flat and I want to say ten times longer." 56.1 Resp. ¶ 73.

the two-page Neverflat website. Ex. S to McDonald Decl. in Supp. of Mot. for Summary Judgment; 56.1 Resp. ¶¶ 45-49. In fact, such a vague statement could never be proven by objective facts, since what constitutes a consistent or adequate bounce depends on the individual player and environmental considerations like temperature and playing surface, etc. See, e.g., 56.1 Resp. ¶ 27; see also i3 *Daubert* Br. 13-15; Veryst *Daubert* Br. 15-19. In fact, Markos himself admitted "I can only mention what is adequate for me. I will not be able to tell you what is adequate for you or adequate for any other person." 56.1 Resp. ¶ 9. The challenged website certainly contained information about Neverflat technology and its air retention capabilities; but (other than the inch numbers on the graph) the only mention of "bounce" is the explanation that, just like traditional basketballs, a cold Neverflat ball will not bounce to the same height as a warm ball.  Ex. S to McDonald Decl. in Supp. of Mot. for Summary Judgment; 56.1 Resp. ¶¶ 45-49.

*Third*, the assertions that Markos's ball first bounced "above the waist" and then "presumably below the waist," 56.1 Resp. ¶ 8, and/or that his ball stopped bouncing "adequately and consistently," id. at 9; see also Pb 4, do not support an inference that anything on Shop.Spalding.com is false, or that anything was wrong with his ball.[10] There is no evidence that any bounce-height change perceived by Markos was not due to some temporary temperature drop, or other factor. Accord Miller v. Wells Fargo Bank, N.A., 994 F. Supp. 2d 542, 557 (S.D.N.Y. 2014) (quotation omitted) ("[T]he causation element is essential: The plaintiff must

---

[10] USA Basketball, "the recognized governing body for basketball in the United States by the International Basketball Federation (FIBA)," recommends dribbling "***at or below waist level***," and as a "point of Emphasis" states: ***"Dribble no higher than the waist."*** *Introduction to Ball Handling and Dribbling*, USA BASKETBALL (dated Dec. 11, 2015), *available at* https://www.usab.com/youth/news/2015/05/introduction-to-ball-handling-and-dribbling.aspx. This plainly refutes the suggestion of some deficiency of below-the-waist bounce and underscores that dribble or bounce height is an individualized personal preference, as Plaintiff himself admits. See, e.g., 56.1 Resp. ¶ 9.

show that the defendant's material deceptive act caused the injury."). After all, Plaintiff—whose Neverflat was predominantly (if not exclusively) played *outside*, 56.1 Resp. ¶ 62—"does not dispute that after he determined in late September or early October 2015 that his Neverflat basketball was not performing adequately, he put the ball away, 'forgot about it,' and never used it again." Id. at 7. Plaintiff himself certainly cannot say whether whatever modest rebound height "change" he perceived (to say nothing of that change's materiality) was not due to the autumn cold of upstate New York, the playing surface, how hard he bounced the ball, or anything else.

   C.   **The Name "Neverflat" Is Not A False Statement.**

   The name "Neverflat" is not itself a misrepresentation. See, e.g., Pb 2-3. And that Markos apparently "understood the name 'Neverflat' to mean the basketball would never go flat," 56.1 Resp. ¶ 4, is not evidence of falsity. ***First***, Markos's ball did not go flat but "continued to have significant air pressure well over one year after purchase." 56.1 Resp. ¶ 14. ***Second***, the argument defies common sense because virtually all of the product representations concern the ability of Neverflat balls to stay inflated *longer* than other balls or stay inflated for some *specific period of time*, not literally forever. See, e.g., Daniel v. Tootsie Roll Indus., LLC, 2018 WL 3650015, at *11 (S.D.N.Y. Aug. 1, 2018) ("[D]etermining the likelihood that reasonable consumers would be misled entails [v]iewing each allegedly misleading statement in light of its context on the label and in connection with the marketing of [the product] as a whole.") (quotation omitted). ***Third***, Plaintiff proffers *no* evidence of a uniform meaning of "flat," whereas, Spalding proffered unrebutted expert evidence demonstrating that "the phrases 'stays inflated' and 'flat' are not uniformly understood" by consumers, let alone understood in the manner articulated by Plaintiff. Spalding's Br. in Opp. to Class Cert. 15-20. ***Fourth***, even if the name "Neverflat" could be construed in the manner being suggested, *i.e.*, an inflatable ball that can *never* be deflated, such a statement would be non-actionable puffery. See, e.g., Ram Intern.,

<u>Inc. v. ADT Sec. Servs., Inc.</u>, 555 F. App'x 493, 501 (6th Cir. 2014) (representations that "creat[e] an image that translates that their system is reliable and never fails" are "vague or aspirational" puffery); <u>Loeffel Steel Prods., Inc. v. Delta Brands, Inc.</u>, 379 F. Supp. 2d 968, 982 (N.D. Ill. 2005) ("length accuracy never seen before" is puffery); <u>In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.</u>, 2009 WL 2940081, at *10 (D.N.J. Sept. 11, 2009) ("It defies logic that a consumer would believe, based on the tag line 'For Today, Tomorrow and Beyond' that Toshiba was committed to producing HD DVD Players indefinitely.")[11]

## II.   PLAINTIFF MISCONSTUES MATERIALITY.

Plaintiff makes two arguments about materiality worth addressing here: (1) the "representations" at issue are material simply by virtue of them being "express" and (2) internal marketing studies render all claims material. Neither is accurate.

***First***, the issue is not whether the primary express statements made by Spalding on the packer are material (<u>e.g.</u>, "Stays Inflated 10x Longer Guaranteed!"), but whether the alleged "representations" that appear to form the basis of *this case* are material (<u>e.g.</u>, "[the] ball is going to bounce the same amount of height every single time I bounce it from day one to month 12," 56.1 Resp. ¶ 66; 54 to 60-inch rebound height; "*fully* inflated"; etc.). All of these purported "representations" are from Shop.Spalding.com, the source of only a small fraction of Neverflat purchases *and* a platform to which Spalding devoted no significant resources. <u>Id.</u> at 44. And these limited statements are *not* material simply by virtue of having been made on the website.

---

[11] Similar product names abound in the consumer marketplace. <u>See</u>, <u>e.g.</u>, NeverLost GPS system, *Hertz.com*, available at https://www.hertz.com/rentacar/productservice/index.jsp?targetPag=SourceLAMCNeverlostus.jsp; "Everlast" punching bags, *Everlast.com*, https://www.everlast.com/fight/boxing/punching-bags; "Never Ending Pasta Bowl," *Olivegarden.com*, https://www.olivegarden.com/specials/never-ending-pasta-bowl. (All last visited Sept. 20, 2018).

For example, in <u>In re Dial Complete Mktg. and Sales Practices Litig.</u>, 312 F.R.D. 36, 61 (D.N.H. 2015), the court held certain representations material (under California law) not simply because they were made, but because "the challenged claims were printed on the label of each and every Dial Complete bottle sold." This notion—that context matters, even where a company made an "express" statement—is even echoed in the authority cited by Plaintiff. In <u>In The Matter of Thompson Med. Co.</u>, 1984 WL 565377 (Nov. 23, 1984), for example, the FTC explained as follows (omitted from Plaintiff's quotation):

> In considering the materiality of claims, we are mindful of the Supreme Court's observation in <u>F.T.C. v. Colgate-Palmolive Co.</u>, 380 U.S. 374, 392 (1965), that ***the Commission's inference of materiality must be "within the bounds of reason."*** Accordingly, ***we do not use our presumption as an inflexible rule that eliminates our need to look at materiality on a case-by-case basis***.

<u>Id.</u> at *60 n.45 (emphasis added). In other words, context *matters*. The full picture of an advertising scheme—its content, prominence, scope, and dissemination—*matters*. And the nature and dissemination of the Shop.Spalding.com website (genres apart from the widely-seen packer) *do not* render the content on that site per se material.

***Second***, Spalding's "internal documents" (█████████████████████████ █████████████████████) also do not automatically render the entire spectrum of alleged performance representations material. <u>Id.</u> In <u>Langan v. Johnson & Johnson Consumer Cos.</u>, 2017 WL 985640, at *9 (D. Conn. Mar. 13, 2017), relied upon by Plaintiff, the court was persuaded of the materiality of a marketing claim because of defendants' internal studies explicitly "discuss[ed] the challenged claim and related wording." <u>Id.</u> at *9. Here, there are *no internal marketing studies* exploring the relative merits of the Shop.Spalding.com-sourced "statements" (whether relating to absolute rebound height, "fully inflated," or "[the] ball is going to bounce the same amount of height every single time I bounce it from day one to month 12," 56.1 Resp. ¶

66), and the materiality of same is not bolstered by *any* pre-existing Spalding study.[12] ████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████ Pb 7. But that general proposition is not at issue here.

*Finally*, not only has Plaintiff failed to proffer evidence of materiality of these statements, but Spalding proffered unrebutted evidence from NYU marketing professor Joel Steckel, Ph.D., demonstrating their *immateriality*. Spalding's Br. in Opp. to Class Cert. 15-20.

## III.   PLAINTIFF PROFFERED NO EVIDENCE OF INJURY.

*First*, Markos's election to sue rather than seek a warranty replacement is fatal because he seeks damages merely for having been allegedly deceived. It is blackletter law that "one cannot recover merely for having been deceived—the deception must have caused an injury." In re Amla Litig., 2018 WL 3629226, at *12 (S.D.N.Y. July 31, 2018); see also Daniel v. Mondelez Int'l, Inc., 287 F. Supp. 3d 177, 197 (E.D.N.Y. 2018) ("Defendant's argument thus conflates elements two (material misrepresentation) and three (injury) for claims under sections 349 and 350."). Markos argues that even had he received a value-equivalent replacement *non-Neverflat* basketball of equal price he would *still* have a cause of action. Pb 17-18. But, this is akin to arguing that, had he returned his Neverflat and received a cash refund, *he would still have a cause of action*, premised solely on the purported "misrepresentation." This is not the law.

*Second*, the notion that Markos's "injury" was established by the expert's "price premium" theory is wrong. Though Colin Weir's testimony should be inadmissible under

---

[12] This logical misstep—that *some fact* relating to air retention or bounce height validates *all* allegations relating to air retention or bounce height—is repeated in a variety of contexts. For example, in the face of Spalding noting that there is *no evidence* that Plaintiff was exposed to the "7 to 9 psi" representation or that his Neverflat failed to meet this benchmark, Plaintiff writes that "the psi representation is an integral part of Plaintiff's overall deceptive marketing and advertising scheme," Pb 14—as if some magic wand transforms what Spalding *did* specifically advertise about Neverflat air retention into *all possible advertisements* about Neverflat retention.

*Daubert*, Plaintiff's admissions here highlight that Weir's "conclusions are based on the premise that ***the Neverflat Technology itself*** (i.e., the technology that is supposed to prevent the ball from losing air) holds no value." Pb 5. Even Plaintiff admits that this assumption is false. For example, it is ***undisputed***, both (a) that "████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████," 56.1 Resp. ¶ 25, and (b) that "Neverflat[®] basketballs utilize ██████████████████████████████████████." <u>Id.</u> at 32. It is also ***undisputed*** that Neverflat basketballs:



are inflated with ████████████████████████████████, which Spalding calls 'Nitroflate.'

<u>Id.</u> Thus, the central assumption underpinning Plaintiff's damages—that Neverflat technology affords "no value"—is admittedly wrong.

## IV.  <u>PLAINTIFF IS NOT ENTITLED TO INJUNCTIVE RELIEF.</u>

***First***, there is no evidence that Plaintiff will purchase Neverflat again. Pb 22. Plaintiff was asked here *three times* to explain this allegation—more than sufficient opportunity to evince some intention of future purchase but for the alleged misrepresentations; and he did no such thing. <u>See</u> Markos Tr. 182:13-183:3. ***Second***, Plaintiff argues that injunctive relief remains appropriate "because Spalding continues to sell Neverflat balls using all of the representations at issue except for the 54-60 inch graphic," Pb 22, which is untrue. Setting aside that this argument essentially acknowledges the mootness of an injunctive relief claim vis-à-vis the "54-60 inch graphic," it is clear that Plaintiff's case significantly revolves around other content that was *only ever displayed on Shop.Spalding.com*, content that has long since ceased to be promulgated by

Spalding. Essentially, every time Plaintiff invokes the "fully inflated" or "any traditional basketball" language, he is citing *only* to Shop.Spalding.com. ***Third***, and finally, Plaintiff writes that the old website claims are not moot because "Spalding does not contend it has discontinued the remaining Neverflat Representations" and has not showed that it is "absolutely clear" that the old website claims will not be revived in the future. Pb 22. Spalding disagrees, <u>see</u> <u>generally</u> 56.1 Resp. ¶ 43—but will help make the issue crystal clear: As a result of Spalding's 2016 relaunch of its Internet presence, Spalding discontinued certain Neverflat-related statements only ever made available on Shop.Spalding.com (including the 54-60 inch graphic and the "fully inflated" or "any traditional basketball" language). These statements will not be revived in the future. Collins Decl. ¶ 3.

## <u>CONCLUSION</u>

For the foregoing reasons, summary judgment should be granted in favor of Spalding.

Dated:  October 12, 2018                    By: <u>s/ Michael R. McDonald</u>
                                            Michael R. McDonald, Esq.
                                            Joshua S. Levy, Esq.
                                            GIBBONS P.C.
                                            One Gateway Center
                                            Newark, NJ 07102
                                            (973) 596-4500
                                            MMcDonald@gibbonslaw.com
                                            JLevy@gibbonslaw.com

                                            *Attorneys for Defendant*
                                            *Russell Brands, LLC*